**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Paul Raymond Weakley, | No. CV-14-02230-TUC- BGM |
| Petitioner, | **ORDER** |
| v. | |
| J. T. Shartle, Warden, | |
| Respondent. | |

Currently pending before the Court is Petitioner Paul Raymond Weakley's *pro se* Petition Under 28 U.S.C. § 2241 for a Writ of Habeas Corpus by a Person in Federal Custody ("Petition") (Doc. 1). Respondent has filed his Return and Answer to Petition Under 28 U.S.C. § 2241 for a Writ of Habeas Corpus and Motion to Dismiss Petition ("Response") (Doc. 12). Petitioner filed his Response to Defendant's Motion to Dismiss (Doc. 14).

As an initial matter, Petitioner named Louis Winn, Warden of the United States Penitentiary–Tucson ("USP–Tucson") as the Respondent. *See* Amended Petition (Doc. 10). The Court takes judicial notice, however, that Louis Winn is no longer warden of USP–Tucson. As such, the Court will substitute the new Warden of USP–Tucson, J. T.

Shartle, as Respondent pursuant to Rule 25(d) of the Federal Rules of Civil Procedure.

## I.    PROCEDURAL BACKGROUND

Petitioner is currently incarcerated at the United States Penitentiary ("USP") in Tucson, Arizona.   *See* Fed. Bureau of Prisons ("BOP") Inmate Locater, https://www.bop.gov/inmateloc/ (last visited September 5, 2017).   Petitioner is serving a one hundred twenty (120) month sentence from the Middle District of Pennsylvania for being a Felon in Possession of Firearms in violation of 18 U.S.C. §922(g)(1) and a concurrent life sentence for Conspiracy Relating to Racketeer Influenced and Corrupt Organizations in violation of 18 U.S.C. § 1962(d).   *See* Answer (Doc. 12), Huband Decl. (Exh. "A"), United States District Court ("USDC") M.D. Pa., Case No. 3:CR-04-161, Judgment in a Criminal Case (Attach. "2") & USDC M.D. Pa., Case No. 3:CR-08-038, Judgment in a Criminal Case (Attach. "4").   In light of Petitioner's life sentence, he has no projected release date.   *See* Answer (Doc. 12), Huband Decl. ("Exh. "A"), Public Information Inmate Data (Attach. "1").

Petitioner challenges a disciplinary conviction that resulted in his loss of good time credits.   Petitioner alleges twenty-two (22) grounds for relief as follows:   (1) the incident report was rewritten, and as such was not reviewed with him within twenty-four (24) hours after staff became aware of the incident, in violation of Petitioner's due process rights.   Additionally, there is no policy or statute which authorizes a "rewrite"; (2) the rewritten incident report was reviewed with Petitioner allegedly nine (9) days late, in violation of his due process rights; (3) the Bureau of Prisons ("BOP") allegedly

violated its own policy by failing to notify Petitioner "immediately" regarding a delay in his Unit Discipline Committee ("UDC") hearing, in violation of his due process rights; (4) Petitioner's UDC hearing was allegedly held thirty-five (35) days late, in violation of his due process rights; (5) Petitioner's staff representative informed him, at the time of the Discipline Hearing Officer ("DHO") hearing, that the video Petitioner requested was not available, as did DHO Petricka. Petitioner alleges that this denial of his right to present evidence in his defense, violated his due process rights; (6) after the denial of Petitioner's request for the video evidence, he complained to DHO Petricka that his staff representative was ineffective, and requested a new representative. This request was denied, and Petitioner alleges that it violated his due process rights; (7) Petitioner was allegedly not allowed to present the evidence he sought to introduce, in violation of his due process rights; (8) surveillance video is recorded over every thirty (30) days, and due to the delays in the disciplinary process Petitioner did not go before the DHO prior to the video being destroyed, in violation of his to process right; (9) Petitioner requested at the DHO hearing to review, or have his staff representative review, the "investigating officer's report." DHO Petricka denied this request, allegedly in violation of Petitioner's due process rights; (10) the Alco-Sensor was used to analyze the suspected liquid, which Petitioner asserts is only a breathalyzer, and its use in this case violated his due process rights; (11) DHO Petricka allegedly spoke with the special investigations section, and conducted her own investigation. Allegedly Petitioner and his staff representative were not allowed to review this evidence, thereby violating his due process rights; (12) because statute and policy for bid that DHO from acting as an "investigator," which DHO

Petricka allegedly did, Petitioner alleges his due process rights were violated; (13) DHO Petricka did not properly consider Petitioner's arguments regarding accessibility of the closet and his proclaimed innocence, depriving him of a fair and impartial hearing; (14) Petitioner's cellmate was given an identical incident report, but found "not guilty," demonstrating that Petitioner did not receive a "fair and impartial" hearing; (15) Petitioner filed a BP-10 regarding the DHO's alleged refusal to issue a report, but allegedly did not receive a receipt or timely response, in violation of his due process rights; (16) Petitioner filed a second BP-10 and alleges that the regional office sent a backdated response, in violation of his due process rights; (17) because the regional office did not respond to Petitioner's allegedly properly filed BP-10, DHO appeal, his due process rights were violated; (18) also because the regional office did not timely respond, Petitioner asserts that his BP-11 was denied in violation of his due process rights; (19) because D.C. allegedly did not timely respond to Petitioner's BP-11 DHO appeal, Petitioner alleges a due process violation; (20) because the Central Office did not respond to Petitioner's BP-11 DHO appeal, petitioner alleges a due process violation; (21) because both the Western Region and Central Office administrative remedy coordinators failed to respond to Petitioner's appeals, his due process rights were violated; and (22) the BOP is unlawfully collecting restitution from Petitioner via the Inmate Financial Responsibility Program ("IFRP"). *See* Petition (Doc. 1). Petitioner seeks an order directing the BOP to stop collecting IFRP payments from Petitioner, change his IFRP status from "refused" to "exempt," to expunge Incident Report No. 2349546, and to remove all associated sanctions. Petition (Doc. 1) at 9.

## II.   FACTUAL BACKGROUND

### A.   *Incident Report No. 2349546*

On September 10, 2012, at approximately 10:30 a.m., Senior Officer ("SO") Hart was contacted by Special Investigative Support ("SIS") "to check the pipe chase areas around cells 113 to 119." Response (Doc. 12), Huband Decl. (Exh. "A"), Incident Report No. 2349546 (Attach. "6") at 6; Petition (Doc. 1) Incident Report No. 2349546 9/12/2012 (Exh. "2"). SO Hart reported that he "tried to open pipe chase door 158-G, located to the left of cell 114[;] [t]he pipe chase lock was blocked preventing the key from fully entering the lock." Response (Doc. 12), Exh. "A," Attach. "6" at 6; *see also* Petition (Doc. 1), Exh. "2." SO Hart "secured cell 114 in order to secure the evidence if contraband was found in the pipe[,] [and] . . . called the lock shop to have them come and open the lock on the pipe chase door." Response (Doc. 12), Exh. "A," Attach. "6" at 6; *see also* Petition (Doc. 1), Exh. "2." Petitioner and his cellmate were identified as the occupants of cell 114. Response (Doc. 12), Exh. "A," Attach. "6" at 6; *see also* Petition (Doc. 1), Exh. "2." SO Hart reported "approximately 25 gallons of Prison Made Intoxicants in that pipe chase." Response (Doc. 12), Exh. "A," Attach. "6" at 6; *see also* Petition (Doc. 1), Exh. "2." SO Hart further reported "[t]he bags of intoxicants were tied to the hole protruding from the flush button located in cell 114." Response (Doc. 12), Exh. "A," Attach. "6" at 6; *see also* Petition (Doc. 1), Exh. "2." SO Hart described the flush button plate as "bent and worn" and "[t]he screws holding the plate on were easy to unscrew and were stripped out." Response (Doc. 12), Exh. "A," Attach. "6" at 6; *see also* Petition (Doc. 1), Exh. "2." SO Hart stated "[i]t was apparent the bags of intoxicants

were put in there from the flush button in cell 114." Response (Doc. 12), Exh. "A," Attach. "6" at 6; *see also* Petition (Doc. 1), Exh. "2." "Prison made intoxicants were tested with ALCO Sensor #3 and tested over .400." Response (Doc. 12), Exh. "A," Attach. "6" at 6; *see also* Petition (Doc. 1), Exh. "2." SO Hart wrote an incident report detailing the discovery of intoxicants and charging Petitioner with a violation of Code 113, Possession of any narcotics, marijuana, drugs, alcohol, intoxicants, or related paraphernalia, not prescribed for the individual by medical staff. Response (Doc. 12), Exh. "A," Attach. "6" at 6; *see also* Petition (Doc. 1), Exh. "2." On September 22, 2012, Lieutenant F. Turner delivered the incident report to Petitioner. Response (Doc. 12), Exh. "A," Attach. "6" at 8. Lieutenant Turner also investigated the incident, and advised Petitioner of his rights. Response (Doc. 12), Exh. "A," Attach. "6" at 8. During Lieutenant Turner's investigation, Petitioner chose not to make a statement, and displayed a fair attitude. *Id.* Lieutenant Turner forwarded the Incident Report to the Unit Discipline Committee ("UDC") for further disposition. *Id.*

On October 24, 2012, the UDC conducted its hearing. Response (Doc. 12), Huband Decl. (Exh. "A"), Discipline Hearing Report & Incident Rpt. No. 2349546 (Attach. "6") at 1, 6. At the hearing, Petitioner was advised of his rights, and received a copy of the advisement of rights form. *Id.*, Exh. "A," Attach. "6" at 1. At the UDC hearing Petitioner stated that "Due process was not followed" and that "[t]he delay notice was sent after the delay." *Id.*, Exh. "A," Incident Rpt. No. 2349546 (Attach. "6") at 6. Based on the severity of the alleged misconduct, the UDC referred the matter to the Discipline Hearing Officer ("DHO") for final disposition, and if Petitioner was found

guilty, recommended sanctions including loss of Good Conduct Time ("GCT") and disciplinary segregation. *Id.* The UDC Case Manager M. County also provided Petitioner his Advisement of Incident Report Delay, Notice of Discipline Hearing Before the DHO, and Disciplinary Hearing Rights. *Id.*, Exh. "A," DHO Packet for Incident Rpt. No. 2349546 (Attach. "6") at 9–13. Petitioner indicated that he wished to have a staff representative at his DHO hearing. Response (Doc. 12), Huband Decl. (Exh. "A"), Attach. "6" at 9, 11.

On November 1, 2012, Petitioner had a DHO hearing before DHO V. Petricka. *See* Response (Doc. 12), Exh. "A," Discipline Hearing Report (Attach. "6") at 1–3. DHO Petricka noted that on October 24, 2012, Case Manager M. County had advised Petitioner of his rights before the DHO, and he had received a copy of those rights. *Id.*, Exh. "A," Attach. "6" at 1. Petitioner had requested Counselor D. McMillan as his staff representative. *Id.*, Exh. "A," Discipline Hearing Report & Notice of Discipline Hearing Before the DHO (Attach. "6") at 1, 11. Petitioner did not request any witnesses, stated that he understood his rights before the DHO, and denied guilt. *Id.*, Exh. "A," Discipline Hearing Report (Attach. "6") at 2. Petitioner stated that "[h]e was in the cell for approximately 4 months[;] Forrest was in there about a month prior to this incident[;] [and] [Petitioner] ha[d] issues with the time frames." *Id.*

DHO Petricka considered the Incident Report; Petitioner's denial of guilt during the DHO proceeding; Petitioner's staff representative's statement regarding the lack of availability of video evidence; and location of the intoxicants. Response (Doc. 12), Exh. "A," Discipline Hearing Report (Attach. "6") at 2. DHO Petricka noted that she

"addressed the time frame issues that inmate Weakley was concerned about." *Id.* DHO Petricka further noted "that although inmate Weakley denied the charges against him, the institution policy holds all inmates accountable for all items in their areas of responsibility which includes any areas that are accessible through fixtures in the cell; in this case the pipe chase that is accessible through the flush button." *Id.* Accordingly, DHO Petricka determined, "[b]ased on the greater weight of the evidence," that Petitioner "committed the prohibited act of Possession of any narcotics, marijuana, drugs, alcohol, intoxicants, or related paraphernalia, not prescribed for the individual by the medical staff, Code 113." *Id.* DHO Petricka imposed sanctions totaling ninety (90) days Disciplinary Segregation, forty-one (41) days Disallowance of Good Conduct Time, one (1) year of lost commissary, and a $200.00 fine. *Id.* On December 7, 2012, DHO Petricka signed the DHO report and it was delivered to Petitioner on December 9, 2012. Response (Doc. 12), Exh. "A," Discipline Hearing Report (Attach. "6") at 3.

### B. *Administrative Remedy Process for Incident Report No. 2349546*

On November 22 2012, Petitioner filed his Regional Administrative Remedy Appeal (BP-10), which was received on November 23, 2012 and designated Case No. 714567-R1. Petition (Doc. 1), Regional Administrative Remedy Appeal 11/22/2012 (Doc. 1-1, Exh. "4") at 4; *see also* Response (Doc. 12), Huband Decl. (Exh. "A"), Administrative Remedy Generalized Retrieval (Attach. "7") at 45 & Regional Remedy Appeal 11/22/2012 (Attach. "8"). On January 30, 2013, Regional Director Juan D. Castillo issued a response to Administrative Remedy No. 714567-R1. *See* Response (Doc. 12), Huband Decl. (Exh. "A"), Admin. Remedy No. 714567-R1 Castillo Ltr.

1/30/2013 (Attach. "9").  Regional Director Castillo recognized Petitioner's claim that he

had not received a DHO Report, but noted that a copy of that report had been issued to

Petitioner on December 9, 2012.  *Id.*, Exh. "A," Attach. "9" at 1.  Regional Director

Castillo further noted that Petitioner had not specified the relief sought.  *Id.*, Exh. "A,"

Attach. "9" at 1.  Nevertheless, Regional Director Castillo reviewed the disciplinary

actions of the UDC and DHO and determined that Petitioner's allegation were without

merit; however, correction of Section 7 of the DHO report was ordered corrected,

because it indicated that Petitioner had been found guilty of possessing illegal narcotics

rather than the actual finding of possession of intoxicants.  *Id.*, Exh. "A," Attach. "9" at

1–2.

On December 20, 2012, Petitioner wrote a letter to the Administrative Remedy

Section, which was received on December 26, 2012. Petition (Doc. 1), Weakley Ltr.

12/20/2012 (Exh. "5").  Petitioner stated that he had not received the DHO's report and

was therefore unable to appeal the results of his disciplinary hearing.  *Id.*, Exh. "5."

Petitioner further explained that he "borrowed" a BP-10 form from another inmate and

sought relief on November 22, 2012.  *Id.*, Exh. "5."  On January 30, 2013, Petitioner

again wrote a letter to the Administrative Remedy section.  Petition (Doc. 1), Weakley

Ltr. 1/30/2013 (Exh. "6").  Petitioner asserted that he had still not received his DHO

report, nor had he received any response to his November 22, 2012 BP-10.  *Id.*, Exh. "6."

Petitioner further expressed frustration regarding his inability to appeal the DHO's

decision.  *Id.*, Exh. "6."

On February 8, 2013, Petitioner filed another Regional Administrative Remedy

Appeal (BP-10), which was received on February 12, 2013 and designated Case No. 724481-R1. Petition (Doc. 1), Regional Administrative Remedy Appeal 2/8/2013 (Doc. 1-1, Exh. "8") at 7–13;[1] *see also* Response (Doc. 12), Huband Decl. (Exh. "A"), Administrative Remedy Generalized Retrieval (Attach. "7") at 46 & Regional Remedy Appeal 2/8/2013 (Attach. "10") at 138–44.[2] Petitioner asserted that he had not received a response to his November 1, 2012 BP-10, and was formally appealing Incident Report No. 2349546. Petition (Doc. 1), Exh. "8" at 7; *see also* Response (Doc. 12), Exh. "A," Attach. "10" at 1. Petitioner alleged eighteen (18) grounds for relief. Petition (Doc. 1), Exh. "8" at 7; *see also* Response (Doc. 12), Exh. "A," Attach. "10" at 1.

On March 5, 2013, Petitioner filed a third Regional Administrative Remedy Appeal (BP-10), which was received on March 13, 2013 and designated Case No. 714567-R2. Petition (Doc. 1), Regional Administrative Remedy Appeal 3/5/2013 (Doc. 1-1, Exh. "9") at 17–26;[3] *see also* Response (Doc. 12), Huband Decl. (Exh. "A"), Administrative Remedy Generalized Retrieval (Attach. "7") at 47 & Regional Remedy Appeal 3/5/2013 (Attach. "11") at 2–11.[4] Petitioner stated that on March 2, 2013 he had "received a fragmented response to BP-10 714567-R1 which also seem[ed] to address some issues presented in the partial appeal of 2-18-2013[.]" Petition (Doc. 1), Exh. "9"

---

[1] The page numbers correspond to the CM/ECF page numbering. Petitioner labeled the pages A–G.

[2] The page numbers correspond to the CM/ECF page numbers of Attachments 1–10 (Doc. 12-3).

[3] The page numbers correspond to the CM/ECF page numbering. Petitioner labeled the pages A–J.

[4] The page numbers correspond to the CM/ECF page numbers of Attachments 11–20 (Doc. 12-4).

at 17; *see also* Response (Doc. 12), Exh. "A," Attach. "11" at 2. Petitioner further asserted that he wished to "void all of the existing administrative remedies concerning incident report #2349546, and the DHO's refusal to issue a report into the enclosed amended appeal of 2-8-13." Petition (Doc. 1), Exh. "9" at 17; *see also* Response (Doc. 12), Exh. "A," Attach. "11" at 2. Petitioner raised fifteen (15) counts in this appeal. Petition (Doc. 1), Exh. "9" at 17–26; *see also* Response (Doc. 12), Exh. "A," Attach. Attach. "11" at 2–11. On March 29, 2013 the Western Regional Office Administrative Remedy Administrative Remedy Coordinator issued a Rejection Notice as to Remedy ID 714567-R2. Petition (Doc. 1), Rejection Notice—Administrative Remedy 3/29/2013 (Doc. 1-1, Exh. "14") at 32; *see also* Response (Doc. 12), Exh. "A," Rejection Notice— Administrative Remedy 3/29/2013 (Attach. "12"). The rejection indicated that Petitioner should have submitted his request to the Central Office level. Petition (Doc. 1), Exh. "14" at 32; Response (Doc. 12), Exh. "A," Attach. "12."

On April 24, 2013, Regional Director Juan D. Castillo responded to Petitioner's request for administrative relief contained in Administrative Remedy No. 724481-R1. Response (Doc. 12), Huband Decl. (Exh. "A"), Admin. Remedy No. 724481-R1, Castillo Ltr. 4/24/2013 (Attach. "13"). Regional Director Castillo stated that Petitioner had originally appealed the matter, and a response was given on January 30, 2013. *Id.*, Exh. "A," Attach. "13." Accordingly, Regional Director Castillo found Petitioner's appeal repetitive, and indicated that his January 2013 response remained in effect. *Id.*, Exh. "A," Attach. "13."

On April 25, 2013, Petitioner filed his Central Office Administrative Remedy

Appeal (BP-11), which was received on May 6, 2013 and given Case No. 714567-A1. *See* Response (Doc. 12), Huband Decl. (Exh. "A"), Administrative Remedy Generalized Retrieval (Attach. "7") at 48 & Central Office Admin. Remedy Appeal (Attach. "14"); *see also* Petition (Doc. 1), Central Office Admin. Remedy Appeal (Exh. "12"). Petitioner indicated that he had not received a response to his regional appeal, but had been instructed to file at the Central Office level. Response (Doc. 12), Exh. "A," Attach. "14" at 18;[5] *see also* Petition (Doc. 1), Exh. "12" at 30. Petitioner requested expungement of this misconduct report. Response (Doc. 12), Exh. "A," Attach. 14 at 27. On May 9, 2013, the Central Office Administrative Remedy Coordinator rejected Petitioner's appeal. *Id.*, Exh. "A," Rejection Notice—Admin. Remedy 5/9/2013 (Attach. "15"). The Central Office's reasons for the rejection included that the appeal was untimely; Petitioner failed to include either a copy of his BP-10 or a copy of the BP-10 response; and the appeal may only include one (1) continuation page. *Id.*, Exh. "A," Attach. "15." Petitioner was further directed to provide a staff memorandum stating the reasons that Petitioner's untimely filing was not his fault. *Id.*, Exh. "A," Attach. "15."

On September 9, 2013, Petitioner filed another Regional Administrative Remedy Appeal (BP-10), which was received on September 19, 2013 and given Case No. 714567-R3. *See* Response (Doc. 12), Huband Decl. (Exh. "A"), Administrative Remedy Generalized Retrieval (Attach. "7") at 50 & Regional Admin. Remedy Appeal (Attach. "16"); *see also* Petition (Doc. 1), Regional Admin. Remedy Appeal (Exh. "15") at 33–

---

[5] This reference is to the CM/ECF page number of Attachments 11–20 (Doc. 12-4).

35.[6]  Petitioner reiterated much of his original regional appeal, and acknowledged the Central Office's reasons for rejecting his BP-11.  *See* Response (Doc. 12), Exh. "A," Attach. "16"; *see also* Petition (Doc. 1), Exh. "12."  Additionally, Petitioner included a "Memorandum for Record" from Case Manager M. County indicating that Petitioner had been in Pennsylvania pursuant to a writ from May 16, 2013 through August 23, 2013.  Response (Doc. 12), Exh. "A," Attach. "16" at 34; *see also* Petition (Doc. 1), Exh. "12."  On September 24, 2013, the Western Regional Office Administrative Remedy Coordinator rejected Petitioner's regional appeal.  *Id.*, Exh. "A," Rejection Notice— Admin. Remedy 9/24/2013 (Attach. "17").  The Western Regional Office's reason for the rejection was that petitioner appealed to the wrong level, and should have filed with the Central Office level.  *Id.*, Exh. "A," Attach. "17."

On November 16, 2013, Petitioner filed his second Central Office Administrative Remedy Appeal (BP-11), which was received on December 16, 2013 and given Case No. 714567-A2.  *See* Response (Doc. 12), Huband Decl. (Exh. "A"), Administrative Remedy Generalized Retrieval (Attach. "7") at 53 & Central Office Admin. Remedy Appeal (Attach. "18").  Petitioner indicated that he had received "the attached returned and unanswered BP-10 DHO appeal from the Western Region with instructions to file it [at the Central Office level]."  Response (Doc. 12), Exh. "A," Attach. "18" at 38.[7]  Petitioner also complained of the BOP's failure to consider his appeal.  Response (Doc. 12), Exh. "A," Attach. "18" at 38.  On December 30, 2013, the Central Office Administrative

---

[6] The page numbers correspond to the CM/ECF page numbering.  Petitioner labeled the pages A–C.

[7] This reference is to the CM/ECF page number of Attachments 11–20 (Doc. 12-4).

Remedy Coordinator rejected Petitioner's appeal. *Id.*, Exh. "A," Rejection Notice—Admin. Remedy 12/30/2013 (Attach. "19").[8] The Central Office's reasons for the rejection included that the appeal was untimely; Petitioner failed to include either a copy of his BP-10 or a copy of the BP-10 response from the Regional Director; and Petitioner did not submit a complete set of the Request (BP-9) or Appeal (BP-10 or BP-11) form. *Id.*, Exh. "A," Attach. "19." Petitioner was again directed to provide a staff memorandum stating the reasons that Petitioner's untimely filing was not his fault. *Id.*, Exh. "A," Attach. "19."

On February 11, 2014, Petitioner's third Central Office Administrative Remedy Appeal (BP-11) was received and given Case No. 714567-A3. *See* Response (Doc. 12), Huband Decl. (Exh. "A"), Administrative Remedy Generalized Retrieval (Attach. "7") at 56. On March 18, 2014, the Central Office Administrative Remedy Coordinator rejected Petitioner's appeal. *Id.*, Exh. "A," Rejection Notice—Admin. Remedy 3/18/2014 (Attach. "20"). The Central Office's reasons for the rejection included that Petitioner failed to include a copy of his BP-10 or a copy of the BP-10 response from the Regional Director and directed Petitioner to resubmit his appeal in proper form within fifteen (15) days of the notice. *Id.*, Exh. "A," Attach. "20." Petitioner did not perfect his appeal regarding Incident Report No. 2349546. *See id.*, Exh. "A," Attach. "7" at 56–59.

. . .

---

[8] David T. Huband's declaration indicates that this occurred on December 16, 2013, but a review of the notice indicates that it appears to be dated December 30, 2013. *See* Response (Doc. 12), Huband Decl. (Exh. "A") at ¶ 16 & Rejection Notice—Admin. Remedy 12/30/2013 (Attach. "19").

## C. *Other Administrative Remedy Requests*

On April 23, 2012, Petitioner filed a Request for Administrative Remedy alleging that Counselor Johannus was attempting "to subvert the Administrative Remedy Process [by lying] on a BP-8 where he claimed that I requested from him a job." Response (Doc. 12), Huband Decl. (Exh. "A"), Administrative Remedy Generalized Retrieval (Attach. "7") at 43 & Request for Admin. Remedy 4/23/2012 (Attach. "21"). Petitioner further asserted that he had never requested a job, and had been trying to obtain "unassigned" status to "pursue working on [his] legal woes." *Id.*, Exh. "A," Attach. "21." Accordingly, Petitioner sought investigation into Counselor Johannus's behavior. *Id.*, Exh. "A," Attach. "21." This request was assigned Case Number 691925-F1. *See id.*, Exh. "A," Attach "7" at 43 & Attach. "21." On October 5, 2012, Warden Winn responded to Petitioner's request noting that his "allegations regarding staff misconduct have been thoroughly reviewed." *Id.*, Exh. "A," Response Re: Admin. Remedy No. 691925-F1 (Attach. "24") at 9.[9] Warden Winn denied Petitioner's request, because "inmates do not have any entitlements to be advised of the results of the investigation or whether any administrative action is taken against staff." *Id.*, Exh. "A," Attach. "24" at 9. On October 26, 2012, Petitioner acknowledged receipt of the Administrative Remedy Appeal. *Id.*, Exh. "A," Attach. "24" at 10.

On July 19, 2012, Petitioner submitted a Regional Administrative Remedy Appeal (BP-10), which was received on July 30, 2012 and given Case No. 700013-R1. *See* Response (Doc. 12), Huband Decl. (Exh. "A"), Administrative Remedy Generalized

---

[9] This reference is to the CM/ECF page number of Attachments 21–31 (Doc. 12-5).

Retrieval (Attach. "7") at 43 & Regional Admin. Remedy Appeal (Attach. "22").

Petitioner alleged that his local administrative remedy coordinator barred him from

participating in the administrative remedy process. *See id.*, Exh. "A," Attach. "22" at 4.[10]

On August 8, 2012, Petitioner's Administrative Remedy No. 700013-R1 was rejected.

*Id.*, Exh. "A," Rejection Notice—Admin. Remedy 8/8/2012 (Attach. "23"). The notice

indicated that Petitioner's issue was rejected because it was not sensitive, and further

notified Plaintiff of his right to appeal the decision. *Id.*, Exh. "A," Attach. "23."

On February 7, 2013, Petitioner filed a Central Office Administrative Remedy

Appeal (BP-11), which was received on February 19, 2013 and given Case No. 700013-

A1. *See* Response (Doc. 12), Huband Decl. (Exh. "A"), Administrative Remedy

Generalized Retrieval (Attach. "7") at 46 & Central Office Admin. Remedy Appeal

(Attach. "27"). Petitioner alleged an ongoing issue with a denial of access to the

administrative remedy process. Response (Doc. 12), Exh. "A," Attach. "27." On

February 25, 2013, the Central Office issued its rejection of Petitioner's appeal. *Id.*, Exh.

"A," Rejection Notice—Admin. Remedy 2/25/2013 (Attach. "28"). The Central

Office's reasons for the rejection included that Petitioner should have filed at the

institution and that Petitioner must first file a BP-9 request through the institution for the

Warden's review. *Id.*, Exh. "A," Attach. "28."

On May 7, 2013, Petitioner filed a Central Office Administrative Remedy Appeal

(BP-11), which was received by the Western Regional Office on May 16, 2013 and given

Case No. 734552-R2. *See* Response (Doc. 12), Huband Decl. (Exh. "A"), Administrative

---

[10] This reference is to the CM/ECF page number of Attachments 21–31 (Doc. 12-5).

Remedy Generalized Retrieval (Attach. "7") at 49 & Central Office Admin. Remedy Appeal (Attach. "29"). Petitioner appealed his request for his Inmate Financial Responsibility Program ("IFRP") status to be changed from "refusal" to "exempt." Response (Doc. 12), Exh. "A," Attach. "29." On May 16, 2013, the Central Office issued its rejection of Petitioner's appeal. *Id.*, Exh. "A," Rejection Notice—Admin. Remedy 5/16/2013 (Attach. "30"). The Central Office's reasons for the rejection included that Petitioner must first file a BP-9 request through the institution for the Warden's review and Petitioner did not submit his request or appeal on the proper form. *Id.*, Exh. "A," Attach. "30."

On December 27, 2013, Petitioner submitted a Regional Administrative Remedy Appeal (BP-10), which was received on January 14, 2014 and given Case No. 691925-R1. *See* Response (Doc. 12), Huband Decl. (Exh. "A"), Administrative Remedy Generalized Retrieval (Attach. "7") at 55 & Regional Admin. Remedy Appeal (Attach. "25"). Petitioner complained of "a serious problem with the administrative remedy process[.]" *See id.*, Exh. "A," Attach. "25." On January 28, 2014, Petitioner's Administrative Remedy No. 691925-R1 was rejected. *Id.*, Exh. "A," Rejection Notice—Admin. Remedy 1/28/2014 (Attach. "26"). The notice indicated that Petitioner's appeal was rejected because it was untimely. *Id.*, Exh. "A," Attach. "26."

## III. ANALYSIS

### A. Jurisdiction

"Federal courts are always 'under an independent obligation to examine their own

jurisdiction,' . . . and a federal court may not entertain an action over which it has no jurisdiction." *Hernandez v. Campbell*, 204 F.3d 861, 865 (9th Cir. 2000) (quoting *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 231, 110 S.Ct. 596, 107 L.Ed.2d 603 (1990), *overruled in part on other grounds by City of Littleton, Colo. v. Z.J. Gifts D-4, L.L.C.*, 541 U.S. 774 (2004)). "Generally, motions to contest the legality of a sentence must be filed under § 2255 in the sentencing court, while petitions that challenge the manner, location, or conditions of a sentence's execution must be brought pursuant to § 2241 in the custodial court." *Id.* at 864. Therefore, a proper characterization of the petition is necessary to a determination of jurisdiction. *Id.*

Here, Petitioner does not claim that the sentencing court imposed an illegal sentence, rather he seeks relief with respect to disciplinary proceedings while incarcerated at a federal facility. As such, Petitioner is challenging the manner, location or condition of the execution of his sentence. *See e.g., Rogers v. United States*, 180 F.3d 349 (1st Cir. 1999) (section 2241 petition is appropriate vehicle to challenge the correctness of a jail-time credit determination, once administrative remedies have been exhausted); *Nettles v. Grounds*, 830 F.3d 922, 927 (9th Cir. 2016) (en banc), ("[c]hallenges to the validity of any confinement or to the particulars affecting its duration are the province of habeas corpus[.]" (quoting *Muhammad v. Close*, 540 U.S. 749, 750, 124 S.Ct. 1303, 158 L.Ed.2d 32 (2004)); *Tucker v. Carlson*, 925 F.2d 330, 332 (9th Cir. 1991) (a prisoner's challenge to the "manner in which his sentence was executed . . . [is] maintainable only in a petition for habeas corpus filed pursuant to 28 U.S.C. § 2241"); *Weinstein v. U.S. Parole Comm'n*, 902 F.2d 1451, 1452 (9th Cir. 1990) ("The

district court had jurisdiction pursuant to 28 U.S.C. § 2241 to review a claim by a federal prisoner challenging a decision of the United States Parole Commission"). Such a challenge must be brought pursuant to § 2241 in the custodial court. At the time of filing the Petition, Petitioner was incarcerated at USP–Tucson in Arizona. Accordingly, this Court has jurisdiction over this matter. *Francis v. Rison*, 894 F.2d 353 (9th Cir. 1990).

### B. Exhaustion

### 1. In General

The Ninth Circuit Court of Appeals has stated:

[28 U.S.C. § 2241] does not specifically require petitioners to exhaust direct appeals before filing petitions for habeas corpus. [Footnote omitted.] However, we require, as a prudential matter, that habeas petitioners exhaust available judicial and administrative remedies before seeking relief under § 2241.

*Castro-Cortez v. INS*, 239 F.3d 1037, 1047 (9th Cir. 2001), *abrogated on other grounds by Fernandez-Vargas v. Gonzales*, 548 U.S. 30, 126 S.Ct. 2422, 165 L.Ed.2d 323 (2006). "The requirement that federal prisoners exhaust administrative remedies before filing a habeas corpus petition was judicially created; it is not a statutory requirement." *Brown v. Rison*, 895 F.2d 533, 535 (9th Cir. 1990), *overruled on other grounds by Reno v. Koray*, 515 U.S. 50, 54–55, 115 S.Ct. 2021, 2023–24, 132 L.Ed.2d 46 (1995). "Nevertheless, '[p]rudential limits like jurisdictional limits and limits on venue, are ordinarily not optional.'" *Puga v. Chertoff*, 488 F.3d 812, 815 (9th Cir. 2007) (alterations in original) (quoting *Castro-Cortez v. INS*, 239 F.3d 1037, 1047 (9th Cir. 2001), *abrogated on other grounds by Fernandez-Vargas v. Gonzales*, 548 U.S. 30, 126 S.Ct. 2422, 165 L.Ed.2d 323 (2006)).

"Courts may require prudential exhaustion if '(1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision; (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review.'" *Puga*, 488 F.3d at 815 (quoting *Noriega-Lopez v. Ashcroft*, 335 F.3d 874, 881 (9th Cir. 2003)). "When a petitioner does not exhaust administrative remedies, a district court ordinarily should either dismiss the petition without prejudice or stay the proceedings until the petitioner has exhausted remedies, unless exhaustion is excused." *Leonardo v. Crawford*, 646 F.3d 1157, 1160 (9th Cir. 2011) (citations omitted). Exhaustion may be excused if pursuing an administrative remedy would be futile. *Fraley v. United States Bureau of Prisons*, 1 F.3d 924, 925 (9th Cir. 1993).

If a prisoner is unable to obtain an administrative remedy because of his failure to appeal in a timely manner, then the petitioner has procedurally defaulted his habeas corpus claim. *See Nigro v. Sullivan*, 40 F.3d 990, 997 (9th Cir. 1994) (citing *Francis v. Rison*, 894 F.2d 353, 354 (9th Cir. 1990); *Martinez v. Roberts*, 804 F.2d 570, 571 (9th Cir. 1986)). If a claim is procedurally defaulted, the court may require the petitioner to demonstrate cause for the procedural default and actual prejudice from the alleged constitutional violation. *See Francis*, 894 F.2d at 355 (suggesting that the cause and prejudice test is the appropriate test); *Murray v. Carrier*, 477 U.S. 478, 492, 106 S.Ct. 2639, 2647–48, 91 L.Ed.2d 397 (1986) (cause and prejudice test applied to procedural defaults on appeal); *Hughes v. Idaho State Bd. of Corrections*, 800 F.2d 905, 906–08 (9th

Cir. 1986) (cause and prejudice test applied to *pro se* litigants).

## 2. BOP Administrative Procedures

The BOP has established an administrative remedy process permitting an inmate to seek review of an issue relating to "any aspect of his/her own confinement." 28 C.F.R. § 542.10(a). Under that process, an inmate seeking to appeal a DHO decision shall submit the appeal "initially to the Regional Director for the region where the inmate is currently located." 28 C.F.R. § 542.14(d)(2). "An inmate who is not satisfied with the Regional Director's response may submit an Appeal on the appropriate form (BP-11) to the General Counsel within 30 calendar days of the date the Regional Director signed the response." 28 C.F.R. § 542.15(a). The deadlines contained within this process may be extended upon request by the inmate and a showing of a valid reason for delay. 28 C.F.R. § 542.15(a); 28 C.F.R. § 542.14(b). An appeal is considered filed on the date it is logged in the Administrative Remedy Index as received. 28 C.F.R. § 542.18. Once an appeal is filed, a Regional Director shall respond within 30 days; General Counsel shall respond within 40 calendar days. *Id.* "If the inmate does not receive a response within the time allotted for reply, including extension, the inmate may consider the absence of a response to be a denial at that level." *Id.*

## 3. Exhaustion in the Instant Case

Here, Respondent avers that Petitioner has failed to exhaust his administrative remedies. Response (Doc. 12) at 8–10. Respondent grouped Petitioner's claims into three (3) categories: (1) due process claims regarding the incident report (Grounds 1–14); (2) due process claims regarding the administrative remedy process (Grounds 15–21);

and (3) a claim regarding the IFRP (Ground 22). *See* Response (Doc. 12). Regarding the first category of claims, Respondent asserts that despite BOP's instructions regarding how to correct the deficiencies in Petitioner's General Counsel appeal, Petitioner never properly filed an appeal. *Id.* at 9. Regarding Petitioner's claims about the administrative process, Respondent again asserts that Petitioner "never properly filed an appeal with the General Counsel at the Central Office." *Id.* Finally, Respondent failed to comply with BOP's instructions to present his IFRP claim to the institution. *Id.* at 10.

A review of the record confirms that Petitioner's repetitive and uneven approach to the administrative remedy process resulted in his failure to exhaust both categories of due process claims. The Court notes, however, that the Government has only asserted that Petitioner failed to exhaust his available administrative remedies, but has not asserted that such claims are procedurally defaulted. As such, the Government has waived Petitioner's procedural default. *Francis v. Rison*, 894 F.2d 353, 355 (9th Cir. 1990). Additionally, the Ninth Circuit Court of Appeals has recognized that:

> the requirement of exhaustion of remedies [is to] aid judicial review by allowing the appropriate development of a factual record in an expert forum; conserve the court's time because of the possibility that the relief applied for may be granted at the administrative level; and allow the administrative agency an opportunity to correct errors occurring in the course of administrative proceedings.

*Ruviwat v. Smith*, 701 F.2d 844, 845 (9th Cir. 1983). In this case, the factual record is adequately developed, and nothing in the record suggests that further administrative review would result in any changes. Furthermore, with regard to Petitioner's IFRP claim, "[b]ecause of the existence of official BOP policy—the IFRP—exhaustion would be

futile here[.]" *Ward v. Chavez*, 678 F.3d 1042, 1046 (9th Cir. 2012). Accordingly, the Court finds that although the exhaustion is faulty, it shall be excused and the Court will reach the merits.

### C. Due Process Regarding Incident Report No. 2349546

Petitioner challenges a disciplinary conviction that resulted in his loss of good time credits. Petitioner alleges fourteen (14) grounds for relief regarding the disciplinary hearing process as follows: (1) the incident report was rewritten, and as such was not reviewed with him within twenty-four (24) hours after staff became aware of the incident, in violation of Petitioner's due process rights. Additionally, there is no policy or statute which authorizes a "rewrite"; (2) the rewritten incident report was reviewed with Petitioner allegedly nine (9) days late, in violation of his due process rights; (3) BOP allegedly violated its own policy by failing to notify Petitioner "immediately" regarding a delay in his UDC hearing, in violation of his due process rights; (4) Petitioner's UDC hearing was allegedly held thirty-five (35) days late, in violation of his due process rights; (5) Petitioner's staff representative informed him, at the time of the DHO hearing, that the video Petitioner requested was not available, as did DHO Petricka. Petitioner alleges that this denial of his right to present evidence in his defense, violated his due process rights; (6) after the denial of Petitioner's request for the video evidence, he complained to DHO Petricka that his staff representative was ineffective, and requested a new representative. This request was denied, and Petitioner alleges that it violated his due process rights; (7) Petitioner was allegedly not allowed to present the evidence he sought to introduce, in violation of his due process rights; (8) surveillance video is

recorded over every thirty (30) days, and due to the delays in the disciplinary process Petitioner did not go before the DHO prior to the video being destroyed, in violation of his to process right; (9) Petitioner requested at the DHO hearing to review, or have his staff representative review, the "investigating officer's report." DHO Petricka denied this request, allegedly in violation of Petitioner's due process rights; (10) the Alco-Sensor was used to analyze the suspected liquid, which Petitioner asserts is only a breathalyzer, and its use in this case violated his due process rights; (11) DHO Petricka allegedly spoke with the special investigations section, and conducted her own investigation. Allegedly Petitioner and his staff representative were not allowed to review this evidence, thereby violating his due process rights; (12) because statute and policy for bid that DHO from acting as an "investigator," which DHO Petricka allegedly did, Petitioner alleges his due process rights were violated; (13) DHO Petricka did not properly consider Petitioner's arguments regarding accessibility of the closet and his proclaimed innocence, depriving him of a fair and impartial hearing; and (14) Petitioner's cellmate was given an identical incident report, but found "not guilty," demonstrating that Petitioner did not receive a "fair and impartial" hearing. Petition (Doc. 12) at 4–12.

### 1.  Legal Standard

"Due process in a prison disciplinary hearing is satisfied if the inmate receives written notice of the charges, and a statement of the evidence relied on by the prison officials and the reasons for disciplinary action." *Zimmerlee v. Keeny*, 831 F.2d 183, 186 (9th Cir. 1987) (citing *Wolff v. McDonnell*, 418 U.S. 539, 563–66, 94 S.Ct. 2963, 2978–79, 41 L.Ed.2d 935 (1974)).  Additionally, "[t]he inmate has a limited right to call

witnesses and to present documentary evidence when permitting him to do so would not unduly threaten institutional safety and goals." *Id.* (citations omitted). "Where an illiterate inmate is involved . . . [or] the complexity of the issue makes it unlikely that the inmate will be able to collect and present the evidence necessary for an adequate comprehension of the case, he should be free to seek the aid of a fellow inmate, or if that is forbidden to have adequate substitute aid in the form of help from the staff or from a sufficiently competent inmate designated by the staff." *Wolff*, 418 U.S. at 570, 94 S.Ct. at 2981. Finally, inmates have a right to an impartial decision maker. *Id.* at 571, 94 S.Ct. at 2982. "Prison disciplinary proceedings[, however,] are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings do[] not apply." *Wolff*, 418 U.S. at 556, 94 S.Ct. at 2975.

Once the minimal procedural requirements of *Wolff* are met, the district court must ask "whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." *Superintendent, Mass. Corrections Inst. v. Hill*, 472 U.S. 445, 455–56, 105 S.Ct. 2768, 2774, 86 L.Ed.2d 356 (1985). "[T]he requirements of due process are satisfied if some evidence supports the decision by the prison disciplinary board to revoke good time credits." *Id.* "Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence." *Id.* Indeed, "[t]he standard is 'minimally stringent' only requiring 'any evidence in the record that could support the conclusion reached by the disciplinary board.'" *Cato v. Rushen*, 824 F.2d 703, 705 (9th Cir. 1987) (citing *Hill*, 472 U.S. at 454–56, 105 S.Ct. at 2774) (emphasis added in *Cato*).

## 2. **Ground One:  Rewritten Incident Report**

Petitioner states that an incident "report was written on 9-10-12 the date of the incident and properly reviewed with petitioner[,] however, this report was discarded and a new report was issued."  Petition (Doc. 1) at 4.  Petitioner further asserts that "there is no provision in policy or statute that authorizes a 'rewrite' of a misconduct report under these circumstances, violating petitioners [sic] right of due process as this was more than the 24 hour limit of [sic] after staff became aware of the incident."  *Id.*

Due process requires that Petitioner be notified of the charges, in writing, at least twenty-four (24) hours *before* his hearing.  *Wolff v. McDonnell*, 418 U.S. 539, 564, 94 S.Ct. 2963, 2979, 41 L.Ed.2d 935 (1974).  Due process does not require notification within twenty-four (24) hours of the incident.  BOP policy states that inmates will "ordinarily receive the incident report within 24 hours of staff becoming aware of [the inmate's] involvement in the incident."  28 C.F.R. 541.5(a); *see also* BOP Program Statement 5270.09, Ch. 2 at § 541.5.  "Program statements are internal agency guidelines that may be altered by the BOP at will[.]"  *Reeb v. Thomas*, 636 F.3d 1224, 1227 (9th Cir. 2011) (quotations and citations omitted).  Moreover, "[a] habeas claim cannot be sustained based solely upon the BOP's purported violation of its own program statement because noncompliance with a BOP program statement is not a violation of federal law."  *Id.*

Here, Petitioner's incident report was rewritten to add the results of the Alco-Sensor tests.  It is undisputed that the report was reviewed with Petitioner more than twenty-four (24) hours prior to his hearing.  Furthermore, DHO Petricka noted that

"Inmate Weakley provided no evidence showing that the re-write impeded his ability to present his defense." Response (Doc. 12), Huband Decl. (Exh. "A"), Discipline Hr'g Rpt. (Attach. "6") at 2. Accordingly, Petitioner received all the process he was due.

### 3. Ground Two: Timeliness of Review

Petitioner asserts that "the incident report petitioner was heard on, the rewrite of 9-12-12, was not reviewed with him until 9-22-12, nine days late[] in violation of his rights to due process." Petition (Doc. 1) at 5. As discussed in Section III.C.2., *supra*, this does not constitute a due process violation.

### 4. Ground Three: Failure to Notify of UDC Delay

Petitioner asserts that "in accordance with policy 5270.7 inmates are to be 'notified immediately in writing' of delays." Petition (Doc. 1) at 5. Petitioner received written notice of the Warden's delay excuse within two (2) weeks of the excuse being signed and six (6) weeks of the incident. *Id.* at 5–6. As discussed in Section III.C.2., *supra*, "[a] habeas claim cannot be sustained based solely upon the BOP's purported violation of its own program statement because noncompliance with a BOP program statement is not a violation of federal law." *Reeb v. Thomas*, 636 F.3d 1224, 1227 (9th Cir. 2011). As such, Petitioner has not alleged a due process violation.

### 5. Ground Four: Timeliness of UDC Hearing

Petitioner asserts that "on 10-24-12 a UDC hearing was held, 35 days late, and 33 days late beyond the wardens [sic] 'forgiveness' of 10-12-13[.]" Petition (Doc. 1) at 6. Petitioner further asserts that he "is entitled by statute and policy to have his UDC hearing within five work days, and because his right to a timely hearing was severely

violated [and] his right of due process was injured." *Id.*  As discussed in Section III.C.2., *supra*, "[a] habeas claim cannot be sustained based solely upon the BOP's purported violation of its own program statement because noncompliance with a BOP program statement is not a violation of federal law." *Reeb v. Thomas*, 636 F.3d 1224, 1227 (9th Cir. 2011).  Moreover, Petitioner cannot point to any statutory authority mandating UDC hearings must occur within five (5) working days.  As such, Petitioner has not alleged a due process violation.

### 6.  Ground Five: Unavailability of Video

Petitioner asserts that his staff representative Counselor McMillan refused his request to obtain video evidence from "the D-1 unit cameras for a few days prior to the discovery of the liquid in the closet, [which] would have shown several inmates, none of which were petitioner, removing the screws from the closet locking device and placing the liquid inside."  Petition (Doc. 1) at 7.  Petitioner alleges that because of Counselor McMillan's refusal, he was denied due process in the disciplinary hearing.  *Id.*

DHO Petricka noted that "the staff rep contacted the SIS department and verified that there was no video available."  Response (Doc. 12), Huband Decl. (Exh. "A"), Discipline Hr'g Rpt. (Attach. "6") at 2.  DHO Petricka further noted that "the institution policy holds all inmates accountable for all items in their areas of responsibility which includes any areas that are accessible through fixtures in the cell; in this case the pipe chase that is accessible through the flush button." *Id.*, Exh. "A," Attach. "6" at 2.  Even assuming, *arguendo*, that the video shows what Petitioner claims, it does not absolve him of guilt.  DHO Petricka found "the staff member's statements and observations [were]

credible and believable." *Id.*, Exh. "A," Attach. "6" at 2. The Incident Report stated that "[t]he bags of intoxicants were tied to the hole protruding from the flush button located in cell 114[;] [i]t was apparent the bags of intoxicants were put in there from the flush button in cell 114[;] [t]he flush button plate was bent and worn[;] [and] [t]he screws holding the plate on were easy to unscrew and were stripped out." *Id.*, Exh. "A," Attach. "6" at 2, 6. As such, even if other inmates accessed the closet and added liquid contributing to the violation, this does not make DHO Petricka's findings regarding Petitioner's guilt faulty. The requirements of due process are satisfied if "there was some evidence from which the conclusion of the administrative tribunal could be deduced[.]" *Hill*, 472 U.S. at 455, 105 S.Ct. at 2774 (quoting *United States ex rel. Vajtauer v. Commissioner of Immigration*, 273 U.S. 103, 106, 47 S.Ct. 302, 303, 71 L.Ed. 560 (1927)). Petitioner's inability to present non-exculpatory evidence is not a due process violation.

### 7. Ground Six: Denial of New Staff Representative

Petitioner asserts that "after the denial of petitioners [sic] request for the video evidence petitioner told DHO patricka [sic] that his staff rep was ineffective in assisting in his defense by failing to collect the requested, and required evidence as is his job . . . and requested the appointment of another-effective-staff rep." Petition (Doc. 1) at 8. Petitioner further asserts that DHO Petricka denied this request depriving him of "a fair and impartial hearing in violation of his rights of due process." *Id.*

Due Process requires that "where an illiterate inmate is involved . . . or whe[re] the complexity of the issue makes it unlikely that the inmate will be able to collect and

present the evidence necessary for an adequate comprehension of the case, he should be free to seek . . . help from the staff or from a sufficiently competent inmate designated by the staff." *Wolff v. McDonnell*, 418 U.S. 539, 570, 94 S.Ct. 2963, 2982, 41 L.Ed.2d 935 (1974). There is no evidence to suggest that Petitioner "is within the class of inmates entitled to advice or help from others in the course of a prison disciplinary hearing." *Id.* Moreover, even if he were within the class of inmates, there is no right to request multiple representatives. As such, Petitioner's due process claim must fail.

### 8. Ground Seven: Denial of Video Evidence

Petitioner again asserts that the unavailability of his requested video evidence violated his due process rights. Petition (Doc. 1) at 8. Petitioner further alleges that he was not informed at the time of the DHO hearing that "saved surveillance video is recycled by the recording system every thirty days." *Id.*

Due Process requires that "the inmate facing disciplinary proceedings should be allowed to call witnesses and present documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals." *Wolff v. McDonnell*, 418 U.S. 539, 566, 94 S.Ct. 2963, 2979, 41 L.Ed.2d 935 (1974). As discussed in Section III.C.6., *supra*, Petitioner's inability to offer non-exculpatory evidence does not violate his due process rights. Even if the lack of video were error, in light of the other evidence, such error would be harmless.

### 9. Ground Eight: Timeliness

Petitioner asserts that "it was because of all of the violations in the statute and policy mandated time limits in the inmate discipline process that found petitioner before

the DHO weeks after the video had been destroyed, and because of all these delays petitioners [sic] ability to present a defense had been fatally impeded in violation of his rights of due process." Petition (Doc. 1) at 9.

As discussed in Section III.C.2., *supra*, "[a] habeas claim cannot be sustained based solely upon the BOP's purported violation of its own program statement because noncompliance with a BOP program statement is not a violation of federal law." *Reeb v. Thomas*, 636 F.3d 1224, 1227 (9th Cir. 2011). Furthermore, as discussed in Sections III.C.6 & 8, Petitioner's inability to present non-exculpatory video evidence does not violate his due process rights.

### 10. Ground Nine: Investigating Officer's Report

Petitioner asserts that "a request was made by petitioner at the hearing for the review of the 'investigating officers [sic] report' by either himself, or his staff rep." Petition (Doc. 1) at 9. Petitioner further alleges that DHO Petricka denied this request in violation of his due process rights. *Id.*

Petitioner received the Incident Report in this matter on September 22, 2017 by Lt. F. Turner, who was also the investigating officer. Response (Doc. 12), Huband Decl. (Exh. "A"), Incident Rpt. No. 2349546 (Attach. "6") at 6–8. DHO Petricka relied, *inter alia*, on the contents of the incident report in making her determination. *Id.*, Exh. "A," Discipline Hr'g Rpt. (Attach. "6") at 2. Due Process requires that "written notice of the charges must be given to the disciplinary-action defendant in order to inform him of the charges and to enable him to marshal the facts and prepare a defense" not less than twenty-four hours before his UDC hearing. *Wolff v. McDonnell*, 418 U.S. 539, 564, 94

S.Ct. 2963, 2979, 41 L.Ed.2d 935 (1974).  This was done here.  Petitioner's due process rights were not violated.

**11. Ground Ten: Alco-Sensor**

Petitioner asserts that "a bogus test was used to determine petitioners [sic] guilt." Petition (Doc. 1) at 9.  Petitioner further asserts that "the ALCO-SENSOR is a blood/alcohol (breathalyzer) analyzing device that is intended ONLY for determining the blood-alcohol level of a human body by blowing into it, and not for liquid sample analysis." *Id.*

BOP Program Statement ("PS") 6590.07 outlines the procedures for its Alcohol Surveillance and Testing Program.  As an initial matter "[t]he Alco-Sensor Model II, III or IV, shall be used for testing."  PS 6590.07 ¶ 6.  Although these instruments may be used as a breathalyzer, "[t]he Alco-Sensor instrument shall be used to test liquids suspected of containing alcohol following procedures outlined in the company brochure." *Id.* ¶ 9.  Furthermore, "[l]iquids with a test reading of .02 or higher shall be considered positive for alcohol." *Id.*

As such, Petitioner's contention is without merit.  The Incident Report documents that the reading was over .400, which far exceeds the .02 limit, and the BOP procedures document use of the Alco-Sensor for both testing individuals and suspect liquids.  *See* Response (Doc. 12), Huband Decl. (Exh. "A,") Incident Rpt. No. 2349546 (Attach. "6") at 6; *see also* PS 6590.07.

**12. Ground Eleven: DHO Petricka's Investigation**

Petitioner alleges that DHO Petricka "stated during the hearing that while she was

investigating this incident she had talked to the special investigations section (SIS), and learned that a large amount or hot chocolate was found in petitioners [sic] cell, and that SIS suspected that the 'suspected liquid' may have contained some hot chocolate." Petition (Doc. 1) at 9–10. Petitioner asserts that "because [he] or his staff rep were not allowed to review this evidence that was being used against him," his due process rights were violated.

There is no indication that DHO Petricka considered this evidence in reaching her decision. *See* Response (Doc. 12), Huband Decl. (Exh. "A"), Discipline Hr'g Rpt. (Attach. "6") at 2. Moreover, as discussed in Section III.C.10., *supra*, Petitioner was provided written notice of the charges against him in sufficient time to prepare his defense. Due process does not require that Petitioner be allowed to review evidence not considered by the DHO.

### 13. Ground Twelve: Impartiality of DHO

Petitioner asserts that "statute and policy strictly forbid the DHO from acting as "investigator" and require them to rely on evidence that has been presented to them, and because DHO patricka [sic] conducted her own investigation, complete with secret reports, her hearing was contrary to statute and policy and has deprived petitioner of a fair and impartial hearing and a hearing with the confines of statute and policy and has violated his rights of due process." Petition (Doc. 1) at 10.

"[D]ue process is satisfied as long as no member of the disciplinary board has been involved in the investigation or prosecution of the particular case, or has had any other form of personal involvement in the case." *Wolff v. McDonnell*, 418 U.S. 539, 592,

94 S.Ct. 2963, 2992, 41 L.Ed.2d 935 (1974) (Marshall, J. concurring in part and dissenting in part). Here, DHO Petricka did not participate in the original incident or its investigation, her only role was as the hearing officer. *See* Response (Doc. 12), Huband Decl. (Exh. "A"), Discipline Hr'g Rpt. & Incident Rpt. No. 2349546 (Attach. "6"). As discussed in Section III.C.12., *supra*, the DHO did not consider any of the evidence Petitioner alleges she obtained improperly. Moreover, Petitioner has not demonstrated any actual bias or impartiality on the part of the DHO, and there is no evidence before the Court to suggest that the DHO's decision was arbitrary. Accordingly, Petitioner's claim regarding DHO bias must fail.

## 14. Ground Thirteen: Consideration of Evidence

Petitioner asserts that "there were no facts supporting the DHO's decision, and that there were many facts to the contrary of petitioners [sic] guilt." Petition (Doc. 1) at 12. Petitioner further asserts that this deprived him of a fair and impartial hearing. *Id.*

As discussed in Section III.C.1., *supra*, "the requirements of due process are satisfied if some evidence supports the decision by the prison disciplinary board to revoke good time credits." *Superintendent, Mass. Corrections Inst. v. Hill*, 472 U.S. 445, 455–56, 105 S.Ct. 2768, 2774, 86 L.Ed.2d 356 (1985). Making this determination "does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence." *Id.* DHO Petricka weighed the evidence before her and found that the staff member's statements and observations were more credible than Petitioner. Thus, there is sufficient evidence to support DHO Petricka's decision, and no due process violation occurred. *See  Cato v. Rushen*, 824 F.2d 703, 705 (9th Cir.

1987) (any evidence in the record is sufficient to meet the minimally stringent requirement of *Hill*).

### 15. Ground Fourteen: Petitioner's Cellmate

Petitioner asserts that his "cellmate was given the exact same incident report . . . and the exact same evidence and exact same circumstances . . . [and] was found 'not guilty'." Petition (Doc. 1) at 12. Petitioner alleges that DHO Petricka told his cellmate that the closet was not in his area of control, there was no evidence of the cellmate placing the liquid in the pipe chase, and because of all the delays there were issues of due process. *Id.* Based on his cellmate's experience, Petitioner claims that he did not receive a fair and impartial hearing. *Id.*

Petitioner's Discipline Hearing Report notes that Petitioner had been "in the cell for approximately 4 months[;] Forrest was in there about a month prior to this incident." Response (Doc. 12), Huband Decl. (Exh. "A"), Discipline Hr'g Rpt. (Attach. "6") at 2. This Court does not have any evidence, beyond Petitioner's unsubstantiated assertions, of what occurred in Petitioner's cellmate's disciplinary hearing; however, it is not inconceivable that DHO Petricka found a finding of not guilty was warranted because of the cellmate's shorter time in the cell and that he was credible. As such, the Court finds that Petitioner was not deprived of a fair and impartial hearing.

### D. Due Process in the Administrative Remedy Process

In Grounds Fifteen through Twenty-one, Petitioner alleges various violations of his due process rights during the administrative remedy process. *See* Petition (Doc. 1) at 12–16. These include: (1) Petitioner filed a BP-10 regarding the DHO's alleged refusal

- 35 -

to issue a report, but allegedly did not receive a receipt or timely response, in violation of his due process rights; (2) Petitioner filed a second BP-10 and alleges that the regional office sent a backdated response, in violation of his due process rights; (3) because the regional office did not respond to Petitioner's allegedly properly filed BP-10, DHO appeal, his due process rights were violated; (4) also because the regional office did not timely respond, Petitioner asserts that his BP-11 was denied in violation of his due process rights; (5) because D.C. allegedly did not timely respond to Petitioner's BP-11 DHO appeal, Petitioner alleges a due process violation; (6) because the central office did not respond to Petitioner's BP-11 DHO appeal, petitioner alleges a due process violation; and (7) because both the Western region in central office administrative remedy coordinators failed to respond to Petitioner's appeals, his due process rights were violated.

As an initial matter, "inmates lack a separate constitutional entitlement to a specific prison grievance procedure." *Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003) (citing *Mann v. Adams*, 855 F.2d 639, 640 (9th Cir. 1988)). Furthermore, as discussed in Sections II.B. and III.B.3, *supra*, it appears that Petitioner's repetitive filings; failure to wait the requisite period for a response; failure to file instructions provided by BOP; and failure to follow BOP policy contributed to his inability to complete the administrative remedy process. Despite these shortcomings, Petitioner filed his Petition and this Court has reviewed the merits of his claims. Accordingly, the Court finds there was no denial of due process.

. . .

*E.  Inmate Financial Responsibility Program (IFRP)*

In Ground Twenty-two, Petitioner alleges that "the BOP has modified petitioners [sic] sentence in violation of law in an attempt to collect funds to pay petitioners restitution assessed by the [M]iddle [D]istrict of Pennsylvania as the statutory duty to set a restitution schedule belongs solely to the sentencing court and not the BOP." Petition (Doc. 1) at 17.

## 1. Statutory and Regulatory Background of the IFRP

### a. Criminal Monetary Penalties

An inmate's criminal monetary penalties are addressed by specific statutory authority. The imposition of fines is governed generally by Section 3572, Title 18, United States Code.  Section 3572(d), 18 U.S.C., governs the time and method of payment, stating in relevant part:

> A person sentenced to pay a fine or other monetary penalty, including restitution, shall make such payment immediately, unless, in the interest of justice, the court provides for payment on a date certain or in installments. If the court provides for payment in installments, the installments shall be in equal monthly payments over the period provided by the court, unless the court establishes another schedule.

18 U.S.C. § 3572(d).  Section 3013(b), 18 U.S.C., states that special assessments "shall be collected in the manner that fines are collected[.]"   Additionally, Section 3664, 18 U.S.C., delineates procedures for issuance and enforcement of orders of restitution.

The Ninth Circuit Court of Appeals has held that "the district court's statutory responsibility to set the restitution payment schedule is 'non-delegable.'"   *Ward v. Chavez*, 678 F.3d 1042, 1046 (9th Cir. 2012) (citing *United States v. Gunning* (*Gunning*

- 37 -

*I*), 339 F.3d 948, 949 (9th Cir. 2003); *United States v. Gunning* (*Gunning II*), 401 F.3d 1145, 1149 (9th Cir. 2005)). Where the court has determined that a "defendant's financial resources are sufficient such that periodic payments are unwarranted, there is no other entity the court delegates its responsibility to in ordering that restitution should be paid immediately, and that restitution order is not unlawful[,] [b]ut where the defendant has insufficient financial resources to make immediate repayment, the district court . . . must set a repayment schedule in the judgment of conviction in order to discharge its responsibilities under the MVRA." *Ward*, 678 F.3d at 1049–50. The scheduling of payment of fines, however, may be delegated to the BOP. *Gunning II*, 401 F.3d at 1150 (citing *Montano-Figueroa v. Crabtree*, 162 F.3d 548, 550 (9th Cir. 1998)).

### b. Inmate Financial Responsibility Program (IFRP)

The BOP "encourages each sentenced inmate to meet his or her legitimate financial obligations" through the IFRP. *See* 28 C.F.R. § 545.10. "As part of the initial classification process, [BOP] staff will assist the inmate in developing a financial plan for meeting those obligations." *Id.* The financial plan is designed to meet the inmate's financial obligations in the following order of priority: (1) special assessment; (2) court-ordered restitution; (3) fines and court costs; (4) state or local court obligations; and (5) other federal government obligations. 28 C.F.R. § 545.11(a). Payments for the aforementioned obligations may be made from institution resources, such as prison work assignments, or from community resources. 28 C.F.R. § 545.11(b).

Through the IFRP, the BOP encourages inmates with financial obligations to participate in the voluntary program, but does not force inmates to participate. *United*

*States v. Lemoine*, 546 F.3d 1042, 1047 (9th Cir. 2008); *see also* 28 C.F.R. § 545.10. The Ninth Circuit Court of Appeals has squarely addressed an inmate claims that the IFRP was "involuntary and that he only assented to the terms of his financial plan 'to avoid the adverse consequences of not agreeing.'" *Lemoine*, 546 F.3d at 1049. The *Lemoine* court held that the IFRP "does not implicate [an inmate's] constitutional rights[,]" because an inmate "ha[s] no entitlement, constitutional or otherwise, to any of the benefits agreeing to participate in the IFRP would provide, such as work detail outside the prison perimeter, a higher commissary spending limit, a release gratuity, or pay beyond the maintenance pay level." *Id.* Accordingly, "[t]he BOP . . . ha[s] the authority to create a financial plan . . . through the IFRP and to impose penalties if [an inmate] fail[s] to accept its terms." *Id.*

### 2. Petitioner's Restitution Is Being Lawfully Collected

Petitioner's written judgment ordered that "[t]he defendant pay a special assessment of $100 to the Clerk, U.S. District Court, due immediately . . . [and] shall pay the balance of the restitution in minimum monthly installments of $100." Response (Doc. 12), Huband Decl. (Exh. "A"), USDC Middle Dist. of Pa., Case No. 3:CR-08-038, Judgment in a Criminal Case (Attach. "4") at 6. As such, the sentencing court met its obligations under *Ward* by setting the restitution repayment schedule. *See Ward v. Chavez*, 678 F.3d 1042, 1046 (9th Cir. 2012). Moreover, the repayment schedule set by BOP for Petitioner to gain the benefits associated with IFRP compliance is $25.00 per quarter. *See* Response (Doc. 12) at 17 n.4; *see also United States v. Lemoine*, 546 F.3d 1042, 1050 (9th Cir. 2008) (holding that "where the district court has properly set a

restitution repayment schedule . . . the BOP has the authority to encourage voluntary payments in excess of those required under the court's judgment by conditioning the receipt of certain privileges during the term of imprisonment on the inmate's participation in the IFRP.")

Petitioner voluntarily enrolled in IFRP, and has participated in the program as recently as 2014. Response (Doc. 12), Huband Decl. (Exh. "A"), Inmate Financial Responsibility Financial Obligation Adjustments (Attach. "31") at 3. Petitioner's obligations under the IFRP are less than those mandated by the sentencing court. *See id.*, Exh. "A," Attach. "6" & Attach. "31." Additionally, Petitioner is free to stop participating in the IFRP at any time and "did not have a preexisting right to receive any of the benefits conditioned on his participation" in the IFRP, nor does he have any constitutional rights to those privileges. *Lemoine*, 546 F.3d at 1046–49. Moreover, the BOP is within its authority offer the IFRP, and Petitioner's voluntarily participation allows the BOP to collect and allocate Petitioner's funds to his special assessments and restitution. Accordingly, Petitioner's claims are without merit and his Petition (Doc. 1) shall be denied.

## IV. CONCLUSION

In light of the foregoing, the Court finds that the due process requirements as delineated by *Wolff* were met in this case. Additionally, the Court finds that the DHO was impartial and the DHO's findings were supported by "some evidence" as required by *Hill*. The Court further finds that Petitioner does not have any constitutional right to a

specific administrative remedy process, and the BOP is properly collecting restitution payments through Petitioner's voluntary participation in the IFRP. Therefore, the Petitioner's Petition (Doc. 1) shall be denied.

Finally, "the plain language of [28 U.S.C.] §2253(c)(1) does not require a petitioner to obtain a [certificate of appealability] in order to appeal the denial of a §2241 petition." *Harrison v. Ollison*, 519 F.3d 952, 958 (9th Cir. 2008). "Nor is there any other statutory basis for imposing a [certificate of appealability] requirement on legitimate §2241 petitions. Although state prisoners proceeding under §2241 must obtain a [certificate of appealability], *see* §2253(c)(1)(A), there is no parallel requirement for federal prisoners." *Id.* Accordingly, because Petitioner is a federal prisoner bringing a legitimate §2241 petition, a certificate of appealability is not required.

Accordingly, IT IS HEREBY ORDERED that:

(1) J.T. Shartle, Warden, is SUBSTITUTED as Respondent for Louis W. Winn, Jr., pursuant to Rule 25(d) of the Federal Rules of Civil Procedure and Rule 43(c)(2) of the Federal Rules of Appellate Procedure;

(2) Petitioner's Petition Under 28 U.S.C. § 2241 for a Writ of Habeas Corpus by a Person in Federal Custody (Doc. 1) is DENIED; and

(3) The Clerk of the Court shall enter judgment and close its file in this matter.

Dated this 15th day of September, 2017.

_____
Honorable Bruce G. Macdonald
United States Magistrate Judge